IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:21cr489-MHT |
| | ) | (WO) |
| ALVIN LEE McCARY | ) | |

OPINION AND ORDER

This criminal case is before the court on the
question whether defendant Alvin Lee McCary has the
mental capacity to stand trial--that is, whether he is
currently "suffering from a mental disease or defect
rendering him mentally incompetent to the extent that
he is unable to understand the nature and consequences
of the proceedings against him or to assist properly in
his defense." 18 U.S.C. § 4241(a).

The parties' experts agree that McCary meets the
clinical criteria for a number of diagnoses, including
mild neurocognitive disorder, unspecified. Although
such a diagnosis does not necessarily render a
defendant incompetent, the experts agree that, in

McCary's case, his current mental condition interferes with both his "factual and rational understanding of the legal process ... [and his] ability to assist his attorney in his own defense."  Fed. Bureau of Prisons Competency Evaluation (hereafter "BOP Evaluation") (Doc. 36) at 1; *see also* Def.'s Competency Evaluation (Doc. 21-1) at 22.  Dr. Manuel Gutiérrez, who evaluated McCary at the Federal Bureau of Prisons (BOP) at the government's request, and Dr. Ashley Christiansen, who evaluated McCary at the request of his defense counsel, reached the same conclusion: that McCary is incompetent to proceed at this time.

The government asks the court to set aside both experts' evaluations and to find McCary competent. However, based on the evidence in the record and the testimony presented at a competency hearing on December 6 and 7, 2022, the court concludes by a preponderance of the evidence that McCary is not competent to proceed.  The court will therefore commit him to the custody of the Attorney General for a reasonable period

of time, not to exceed four months, for a determination of whether he will attain competency within the foreseeable future.  *See* 18 U.S.C. § 4241(d)(1).

## A. COMPETENCY DETERMINATION

McCary is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Early in this case, defense counsel raised the possibility that his "long history of mental illness" might impact his competency to stand trial.  Def.'s Mot. to Continue Trial (Doc. 16) at 1.  Defense counsel retained Dr. Christiansen, a forensic psychologist, who found McCary incompetent to proceed at this time.  In response, the government requested that McCary undergo a second evaluation, this time at the BOP.  The court sent McCary to the BOP for the evaluation, and the government's expert also concluded that McCary was not competent to stand trial.

Courts apply a two-part test to determine competency.  *See Bundy v. Dugger*, 850 F.2d 1402, 1408

3

(11th Cir. 1998).   First, the court must make an initial finding as to whether the defendant suffers from "a clinically recognized disorder." *Id*.   If so, the court proceeds to the second step of the inquiry: determining whether "that disorder render[s] the defendant incompetent." *Id*.   For a defendant to be considered competent to stand trial, he must have both the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (quotation marks omitted).

As the Eleventh Circuit Court of Appeals has explained, expert testimony is "particularly valuable" during the medical factfinding stage of the competency inquiry. *Bundy*, 850 F.2d at 1408 (quoting *Bruce v.*

*Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976)\*).  Without expert testimony, it would be difficult for the court to ascertain a defendant's abilities effectively, because "the existence of even a severe psychiatric defect is not always apparent to laymen."  *Id*.

The court first asks whether McCary suffers from a clinically recognized disorder.  Here, McCary was evaluated separately by two licensed psychologists, Dr. Gutiérrez and Dr. Christiansen, who both reached the same conclusion: that McCary meets the clinical criteria for mild neurocognitive disorder, unspecified, among other diagnosed mental conditions.  *See* BOP Competency Evaluation (Doc. 36) at 9; Def.'s Competency Evaluation (Doc. 21-1) at 17.  Based on the testimony of both experts, the court is persuaded that McCary suffers from a clinically recognized disorder, and now

_____

\* In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

turns to the second step of its inquiry: whether this diagnosis renders McCary incompetent.

To understand the basis for the court's findings, it is helpful to begin with an explanation of each evaluator's process and findings. As part of her competency evaluation, Dr. Christiansen reviewed McCary's medical documents and court records, conducted a clinical interview and a competency interview, assembled a full psychosocial history, and administered the Minnesota Multiphasic Personality Inventory-3 test. *See* Def.'s Competency Evaluation (Doc. 21-1) at 1. Based on this evaluation, Dr. Christiansen found that McCary meets the criteria for mild neurocognitive disorder, unspecified, in addition to adjustment disorder; unspecified trauma and stressor-related disorder; alcohol use disorder, severe; stimulant (methamphetamine) use disorder, moderate; and adult antisocial behavior. *See id*. at 17. She added that McCary has a "significant history of head trauma, as well as chronic severe substance use," and that his

6

"presentation is reflective of cognitive decline from prior functioning." *Id*. at 14.

With regard to the diagnosis of mild neurocognitive disorder, the use of the word "mild" does not indicate that the condition is not serious. As Dr. Christiansen testified during the competency hearing on December 7, 2022, the word "mild" in this context carries diagnostic significance. Individuals diagnosed with "mild" neurocognitive disorders show evidence of cognitive decline in one or more domains, but are generally able to live independently, even though "greater effort, compensatory strategies, or accommodation may be required." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Section II-H (5th ed. 2013). In contrast, individuals with "major" neurocognitive disorders, such as dementia, struggle to live and function independently, and require assistance with aspects of daily living such as managing medications or paying bills. *See id*. The use of the word "mild" as a

descriptor, Christiansen explained, should not be understood as minimizing the effect or nature of an individual's impairments: instead, it distinguishes a serious disorder from its more severe form.

Dr. Christiansen noted that McCary "presented with tangential and perseverative thought processes," "struggled to maintain attention," and appeared to have trouble "retaining new information," in addition to other impairments. *Id*. at 14.  Although he was able to describe the charges he is facing accurately after reviewing the indictment, and was aware of the potential consequences associated with a felony conviction, he had difficulty describing the evidence a prosecutor might present against him and "struggled to engage in a discussion regarding his plea options in the present case." *Id*. at 19.  Dr. Christiansen also reported that McCary was able to describe the role of "pertinent court personnel," such as a judge, in a general manner, *id*. at 20, but he was not able to

describe "basic trial procedures" in a coherent or
consistent way. *Id*. at 19.

Dr. Christiansen ultimately concluded that
"McCary's rational understanding of his current legal
circumstances was insufficient" for competency. *Id*. at
19. Her reasoning was based on a number of factors,
including his apparent struggle "to apply the factual
knowledge he was able to demonstrate to his current
situation," "to provide an analysis of the most likely
outcome in his present case," "to engage in a rational
discussion regarding the strength of the potential
evidence against him," and to focus on relevant
information "when discussing potential outcomes." *Id*.
at 20.

With regard to McCary's ability to assist counsel
with his defense, Dr. Christiansen observed that he
"struggle[d] significantly to communicate meaningfully
with his attorney, to retain and utilize information
provided to him by his attorney, or to retain and
utilize information provided in court." *Id*. at 22. He

*did* demonstrate the ability "to remember key words or phrases within a given concept or example," but he struggled to apply those examples to his own situation. *Id*. at 21.   Dr. Christiansen concluded that McCary's "constellation of symptoms" prevent him from communicating effectively with his attorney.   *Id*. at 22.

The BOP's expert, Dr. Gutiérrez, used a slightly different process but reached the same result.   He reviewed McCary's medical and legal history and engaged him in approximately three hours of psychological testing and clinical interviews.   *See* BOP Competency Evaluation (Doc. 36) at 4–5.   As part of that assessment, Dr. Gutiérrez administered a Structured Inventory of Malingered Symptomology, which is a screening measure used to detect malingering, and the Georgia Court Competency Test ("GCCT"), an objective measure that assesses general knowledge, courtroom layout, and specific legal knowledge.   *See United States v. Giraldo*, 2011 WL 7946037, at *16 (M.D. Fla.

2011) (Polster Chappell, M.J.) (describing the function of the GCCT as a meaningful tool for evaluating aspects of competency).

Based on this evaluation and a review of McCary's records, Dr. Gutiérrez found that McCary met the diagnostic criteria for mild neurocognitive disorder, unspecified; alcohol use disorder, in a controlled environment; stimulant (methamphetamine) use disorder, in a controlled environment; and adult antisocial behavior. *See* BOP Competency Evaluation (Doc. 36) at 9. Like Dr. Christiansen, Dr. Gutiérrez found that McCary's mild neurocognitive disorder manifested in a sufficiently severe manner as to "interfere[] with his factual and rational understanding of the legal process," as well as his "ability to assist his attorney in his own defense." *Id*. at 1. For example, he noted that, although McCary was able to describe the nature of guilty and not-guilty pleas correctly, he was "unable to adequately discuss the parameters of a plea bargain" and "provided incomplete and confused

responses regarding the roles of the judge, jury, prosecutor, defense attorney, and witnesses." *Id*. at 11.  Dr. Gutiérrez also found the results of McCary's screening for malingering were "not suggestive of malingered symptomology." *Id*. at 9.  For these reasons, Dr. Gutiérrez also concluded that McCary is incompetent to stand trial. *See id*. at 12.

Contrary to these unanimous expert findings, the government argues that McCary is nevertheless competent to stand trial.  Over the course of the two-day competency hearing, the government introduced excerpts from McCary's recorded phone calls and from both psychiatric evaluations as evidence that he is a rational individual.  For example, the government emphasized a recorded moment during a conversation between McCary and his girlfriend, in which McCary interrupts her and explains that he wants to stop talking about hidden firearms because he is being recorded.  The government argues that this demonstrates an understanding of evidence and self-incrimination, as

well as an ability to multitask.  Another recorded
conversation includes McCary telling his girlfriend
that she did well by alerting investigators to his
history of brain damage.  The government asks the court
to view this statement, and statements like it, as
proof that McCary can think rationally about how
specific evidence might help or hurt him.

In *Strickland v. Francis*, the Eleventh Circuit
observed that "it is well established that a factfinder
need not adhere to an expert opinion on incompetency if
there is reason to doubt it."  738 F.2d 1542, 1552
(11th Cir. 1984).  However, where "expert testimony so
clearly and overwhelmingly points to a conclusion of
incompetency," a factfinder "cannot arbitrarily ignore
the experts in favor of the observations of laymen."
*Id*.  This case exists in between these two guideposts.
While the government has identified a few specific
examples that run contrary to the experts' ultimate
conclusions, these points are not sufficient to
overcome the clear and overwhelming expert testimony

and other evidence supporting a finding of incompetency.

Both expert forensic psychologists had access to the same recorded phone calls introduced at the competency hearing, and at that hearing government counsel examined one of the experts at length about the phone calls. Both experts still agree that McCary is incompetent to stand trial. They both concluded that his moments of rational thinking are not sufficient to meet the legal standard for competency because, despite some isolated demonstrations of rationality and lucidity, he is unable on a reasonably consistent basis to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

The court recognizes that McCary, at times, demonstrates a clear understanding of the charges he is facing and the role of evidence in a legal proceeding, and these statements do give the court some pause. However, the complete recordings of the phone calls

provide a fuller context for understanding his mental state. In between moments of clarity, McCary veers wildly off topic and struggles to answer questions coherently. The court must look at the record as a whole, rather than cherry-picking moments in which McCary demonstrates rationality, in evaluating his overall ability to proceed.

Even if the court agreed that McCary appears to understand the nature and consequences of these proceedings, that would not be enough to establish his competency. To be found competent, McCary must *also* be able to assist properly in his own defense. *See* 18 U.S.C. § 4241(a). The forensic psychologists' evaluations and McCary's own statements in the recorded conversations provide compelling evidence that he is unable to communicate effectively and clearly on a consistent basis. The court is therefore convinced that he does not have the ability to assist properly in his defense at this time.

15

In sum, the court is persuaded by the weight of the expert testimony. The expert's evaluations were thorough, and they provided clear, reasonable explanations for their opinions, supported by examples. Here, cherry-picked quotes do not outweigh the well-supported opinions of two independent forensic examiners. Therefore, at this time, the court finds McCary incompetent to stand trial.

## B. RESTORATION COMMITMENT

Once a defendant has been found incompetent to stand trial, the court must order, pursuant to 18 U.S.C. § 4241(d)(1), that the defendant be committed to the Attorney General for hospitalization until it can be determined whether a substantial probability exists that within the foreseeable future, the defendant will regain the capacity to be tried. *See United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990). Section 4241(d)(1) limits the defendant's confinement to four months, and any additional period of

confinement depends upon the court's finding that there is a substantial probability that "within the additional time [the defendant] will attain capacity to permit trial, 18 U.S.C. § 4241(d)(2)(A), or if he is found to create a substantial risk to himself and to others, pursuant to 18 U.S.C. § 4246." *Id*. at 1303.

The court will enter such an order here. The statutory time period for the examination shall commence on the day McCary arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

The court will further order that, once a determination has been made as to whether McCary can be restored, and before the expiration of the four-month statutory period, that the BOP prepare and file a psychological report with this court. This report should summarize the course of McCary's evaluation and treatment, and state the examiner's findings, opinions, and conclusions regarding his attainment of competency

**17**

to proceed in this case, including whether the examiner believes that there is a substantial probability that he will, in the foreseeable future, attain the capacity to permit the trial to proceed.   Once the court receives the report, it will determine whether McCary's commitment period needs to be extended pursuant to 18 U.S.C. § 4241(d)(2) for an additional reasonable period until his mental condition is so improved that trial may proceed.

***

Accordingly, it is ORDERED as follows:

(1)   It is declared, pursuant to 18 U.S.C. § 4241(d), that defendant Alvin Lee McCary is currently mentally incompetent to proceed in this case--that is, he is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and

18

consequences of the proceedings against him and to assist in his defense.

(2) Pursuant to 18 U.S.C. § 4241(d)(1), defendant McCary is committed to the custody of the Attorney General for such reasonable period of time, not to exceed four months from the date of his admission to the appropriate federal mental-health facility, as is necessary for the Federal Bureau of Prisons to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

(3) No later than four months from the date of defendant McCary's admission to the appropriate federal mental-health facility, the examiners designated to conduct or supervise his treatment shall file with the court and send to counsel of record a written psychological report. The report shall summarize the course of defendant McCary's evaluation and treatment. It shall also state the examiner's findings, opinions, and conclusions regarding McCary's attainment of

19

competency to proceed in this case, including whether the examiner believes there is a substantial probability that defendant McCary will, in the foreseeable future, attain the capacity to permit the trial to proceed.

DONE, this the 14th day of December, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE